UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TERRY STEELE, | ) | |
| | ) | |
| Plaintiff, | ) | 05 C 1956 |
| | ) | |
| v. | ) | |
| | ) | Honorable Charles R. Norgle |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Charles R. Norgle, District Judge

Before the court are the parties' cross Motions for Summary Judgment. For the following reasons, Plaintiff's Motion for Summary Judgment is granted, and Defendant's Motion for Summary Judgment is denied. The case is remanded to Defendant for further proceedings consistent with this Opinion.

## I. INTRODUCTION

**A. Facts**[1]

Plaintiff Terry Steele ("Steele") is a former City of Chicago firefighter. In 1991, Steele suffered a fall on the job in which he injured his lower back. He was diagnosed with a bulging disc and muscle strain, and was prescribed physical therapy. Steele returned to work, but in 1994, he was injured again. On this occasion, Steele passed out from smoke inhalation while

---

[1] A full recounting of Plaintiff's medical problems can be found at Steele v. Barnhart, 290 F.3d 936 (7th Cir. 2002) (vacating and remanding). The court takes the facts from the Seventh Circuit's Opinion, as well as the Administrative Record in this case.

1

fighting a fire, fell down a flight of stairs, and hit his head. After this second fall, Steele was diagnosed with lumbar strain and chronic low back pain. In addition, Steele began to experience "blackout spells," or lapses of consciousness, which were diagnosed as petit mal epileptic seizures. Steele was forced to retire from the Chicago Fire Department, and has apparently not worked at any position since these incidents.

Electroencephalograms (EEG's) performed in May 1994 indicated that Steele suffers from "ictal (seizure) episode[s]." Steele was prescribed an anticonvulsant medication, Tegretol, to control these seizures. One of Steele's physicians, Dr. Steven Brint, reported in November 1994 that the seizures had stopped, and an EEG performed at that time revealed that the ictal patterns had ceased. However, the EEG also revealed that Steele suffered from a "slight neurophysiological disturbance" in the temporal areas of his brain. Dr. Brint examined Steele again in April 1995, and reported that the Tegretol was controlling Steele's seizures to some extent, but that Steele continued to suffer several seizures a month. In April 1996, another of Steele's physicians, Dr. Julius Villaflor, reported that Steele was complaining of "frequent" seizures. Dr. Rochelle Hawkins, who examined Steele two months later, reported that Steele suffered from daily seizures, but noted that Steele admitted he was not taking his medication during this time period. In addition to (or perhaps as a result of) his low back pain and epileptic seizures, Steele began to suffer from depression. A psychologist and a psychiatrist have both diagnosed Steele with "depressive neurosis."

## B. Procedural History

In January 1996, Steele filed an application with the Social Security Administration ("SSA") for Supplementary Security Income benefits, asserting that the above described

2

infirmities completely precluded him from gainful employment. Steele asserted that he became disabled on March 1, 1994. The SSA initially denied Steele's application on April 16, 1996. Steele filed a request for reconsideration with the SSA, but this request was denied on September 23, 1996. Steele then requested a hearing before an Administrative Law Judge ("ALJ"). Following this hearing, ALJ Townsend-Anderson found that Steele was no longer able to work as a firefighter, as Steele suffered from "degenerative disc disease, controlled epilepsy, right hand and depressive disorders." However, the ALJ determined that Steele was not disabled, because he retained some "residual functional capacity" for "light work," such as "housekeeper," or "security guard." Steele then filed a request for review of the ALJ's determination, but the Appeals Council denied this request. The ALJ's decision therefore became the final decision of the Commissioner. See 20 C.F.R. § 416.1481.

Steele then filed his initial complaint in the Northern District of Illinois on August 20, 1999. Following the parties' cross Motions for Summary Judgment, Judge Bucklo found that the SSA's determination that Steele was not disabled was supported by substantial evidence in the record. Judge Bucklo therefore granted the SSA's Motion for Summary Judgment, and denied Steele's Motion for Summary Judgment. See Minute Order, June 14, 2000.

Steele appealed to the Seventh Circuit. The Seventh Circuit's Opinion addressing this case was highly critical of the manner in which ALJ Townsend-Anderson determined that Steele was not disabled. Judge Rovner, writing for the appellate court, indicated that there were three serious problems in the ALJ's reasoning.

> The chief problem lies in the ALJ's mischaracterization of the medical evidence of Steele's epilepsy. The ALJ's determinations that Steele's May 1994 EEG was 'generally unremarkable' and that his November EEG was 'unremarkable' . . . are

3

> untenable on the current record. There are in fact two EEG reports from May. One demonstrates twenty episodes of ictal rhythms during an over night EEG, and the other shows a one-minute episode during a regular EEG . . . [A]lthough the November report does not show any ictal patterns, it does show a 'slight neurophysiological disturbance' in Steele's brain . . . [W]e are left to wonder how a report documenting a neurophysiological disturbance, however 'slight,' could be characterized as 'unremarkable.'

Steele, 290 F.3d at 940.

> The ALJ also deprecated the medical evidence of Steele's epilepsy by concluding that his seizures were controlled by medication . . . [A medical report relied on by the ALJ] fails to address the *effect* of Steele's alleged noncompliance, if any, on the frequency of his seizures. The cases recognize that evidence of noncompliance by itself proves nothing . . . what matters instead is whether the record contains evidence of a causal link between the noncompliance and the ongoing seizure episodes.

Id. at 940-41.

> Along with the ALJ's tenuous discussion of the medical evidence, we also agree with Steele that the ALJ provided insufficient reasons for discounting his own testimony – including his assertions of depression, difficulty walking, daily seizures, and trouble lifting heavy objects because of his bad back.

Id. at 941. Judge Rovner also indicated that, in addition to the above problems, the ALJ "relied on incomplete vocational testimony," because the vocational expert may not have know about all of Steele's limitations. Id. at 938. The Seventh Circuit therefore vacated Judge Bucklo's decision, and remanded the case to the SSA "for further proceedings consistent with this opinion." Id. at 943.

A hearing was then held before ALJ McGuire on September 3, 2004. On January 28, 2005, ALJ McGuire issued a decision finding that: Steele suffered from severe petit mal seizures, depression, low back pain, and heart disease; Steele did not suffer from any "listed impairment" contained within SSA regulations; Steele's allegations regarding his limitations were not credible; and that Steele could perform "medium work" such as "store laborer" or

4

"hospital cleaner." ALJ McGuire therefore found that Steele was not disabled. The Appeals Council again declined to review the case. This decision made ALJ McGuire's determination the final decision of the Commissioner. See 20 C.F.R. § 416.1481.

Steele then filed the instant complaint in the Northern District of Illinois on April 4, 2005. The parties have filed cross Motions for Summary Judgment. These Motions are fully briefed and before the court.

## II. DISCUSSION

### A. Standard of Decision

To make a successful claim for disability benefits under the Social Security Act, an individual must demonstrate that he or she is unable "'to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less that 12 months.'" Windus v. Barnhart, 345 F. Supp. 2d 928, 930 (E.D. Wis. 2004) (quoting 42 U.S.C. § 423(d)(1)(A)). Social Security regulations prescribe a five-step test to determine whether an individual is disabled:

> The following steps are addressed in order. (1) Is the claimant presently unemployed? (2) Is the claimant's impairment 'severe?' (3) Does the impairment meet or exceed one of the list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step, or on steps (3) and (5) to a finding that the claimant is disabled. A negative answer, at any point other than step (3), stops inquiry and leads to a determination that the claimant is not disabled.

Taylor v. Schweiker, 739 F.2d 1240, 1241 n.1 (7th Cir. 1984); see also Windus, 345 F. Supp. 2d at 930; 20 C.F.R. § 416.920(a)(4).

Under this five-step test, a claimant will be found presumptively disabled if he or she "makes the necessary showing at steps 1-3." Windus, 345 F. Supp. 2d at 930. If the claimant cannot show that he or she is presumptively disabled, "the ALJ must consider whether the claimant possesses the residual functional capacity ("RFC") to perform her past work." Id. If the claimant does not have the necessary RFC to return to his or her prior position, "the burden shifts to the Commissioner to demonstrate that the claimant can successfully perform a significant number of other jobs that exist in the national economy." Id. The Commissioner can satisfy this burden by either presenting the testimony of a vocational expert, or "through the use of the 'Medical-Vocational Guidelines' . . . a chart that classifies a person as disabled or not disabled based on her exertional ability, age, education, and work experience." Id. at 930-31 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2).

The court will not disturb the Commissioner's finding as to a claimant's disability as long as that decision "is supported by substantial evidence and is free from legal error." Steele, 290 F.3d at 940; see also Jens v. Barnhart, 347 F.3d 209, 212 (7th Cir. 2003). "Evidence is 'substantial' if it is sufficient for a reasonable person to accept as adequate to support the decision." Johansen v. Barnhart, 314 F.3d 283, 287 (7th Cir. 2002). "To determine if substantial evidence exists, the court reviews the record as a whole, but is not allowed to substitute its judgment for the ALJ's by 'reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility.'" Cannon v. Apfel, 213 F.3d 970, 974 (7th Cir. 2000) (quoting Williams v. Apfel, 179 F.3d 1066, 1071-72 (7th Cir. 1999)). This court will therefore not make any determination as to whether Steele is disabled. Our review is limited to whether the Commissioner's finding of not disabled is supported by substantial evidence. See Lee v. Sullivan, 988 F.2d 789, 792 (7th Cir. 1993).

6

## B. The Commissioner's Determination that Steele is Not Disabled is Not Supported by Substantial Evidence

As the court has previously noted, the Seventh Circuit has determined that it was necessary to remand this case to the Commissioner for three reasons: the ALJ misconstrued medical evidence related to Steele's epilepsy, "inadequately explained why she discredited Steele's own testimony," and "relied on incomplete vocational testimony." Steele, 290 F.3d at 938. The court now considers ALJ McGuire's report to determine whether this ALJ cured the above defects in reaching his decision.

### 1. *The medical evidence of Steele's epilepsy*

The Seventh Circuit indicated that it found ALJ Townsend-Anderson's characterization of Steele's EEG's troubling, and specifically indicated that the new ALJ should explain why EEG's that showed "ictal rythms" and a "slight neurophysiological disturbance" could be properly characterized as "unremarkable." Id. at 940. ALJ McGuire's report, however, contains no such explanation. In fact, ALJ McGuire's report ignores the EEG's altogether.

The Seventh Circuit also indicated that ALJ Townsend-Anderson's reliance on the reports of Drs. Brint and Hawkins was inadequate to establish that Steele's noncompliance with medication was the cause of the frequency of his seizures. Id. at 940-41. The new ALJ was specifically directed to articulate a reason that Steele's "seizures would not continue at their current rate were the prescribed treatment followed." Id. at 941. Beyond again citing the reports of Drs. Brint and Hawkins, ALJ McGuire has not followed the Seventh Circuit's directive on this matter. The court notes that the "report" of Dr. Conte, which ALJ McGuire cites briefly, is a hand-written, two-sentence note which indicates only that Dr. Conte has examined a previous

7

medical evaluation of Steele done by University of Illinois doctors, and that, in Dr. Conte's opinion, Steele can no longer work as a firefighter. Dr. Conte's "report" provides no additional information as to the causal connection between the rate of Steele's seizures and his alleged noncompliance with medication.

Finally, the Seventh Circuit noted that "the ALJ did not receive evidence of the level of medication in Steele's blood – even though the partly adversarial, partly inquisitorial, procedure for adjudicating social security claims requires the ALJ to order additional tests if necessary to render an informed disability determination." Id. at 941 (citing Social Security Ruling 87-6). There is no indication that ALJ McGuire received or considered such evidence.

## 2. *Steele's testimony*

In remanding this case, the Seventh Circuit noted that "the ALJ provided insufficient reasons for discounting [Steele's] own testimony – including his assertions of depression, difficulty walking, daily seizures, and trouble lifting heavy objects because of his bad back." Id. at 942. ALJ McGuire also discounted Steele's testimony regarding his disabilities, finding Steele's "allegation of being unable to work [not] fully credible." In so finding, ALJ McGuire relied heavily on Steele's testimony regarding his aspirations to return to school and earn a professional degree. In addition, ALJ McGuire engaged in a cursory, one paragraph, analysis of Steele's back condition and depression.

An ALJ's findings based on the credibility of a claimant must be based on "specific reasons," which are

> sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. The ALJ must consider the following factors when assessing credibility: the

individual's daily activities; location, duration, frequency and intensity of pain; factors that precipitate and aggravate the symptoms; type, dosage, effectiveness, and side effects of any medication the individual takes to alleviate symptoms; treatment received; any measures other than treatment the individual used to relieve pain/symptoms; any other factors concerning the individual's functional limitations and restrictions due to pain/other symptoms.

SSR 96-7; see also 20 C.F.R. § 461.929(c). ALJ McGuire's credibility determination as to Steele's testimony simply does not address the above factors in sufficient depth or detail. See Steele, 290 F.3d at 942 ("Without an adequate explanation [of the ALJ's reasons for her credibility finding], neither the applicant nor subsequent reviewers will have a fair sense of how the applicant's testimony is weighed.").

### 3. *Vocational testimony*

Finally, the Seventh Circuit noted problems with the vocational expert's testimony before ALJ Townsend-Anderson. "[N]othing in the record reflects that the vocational expert independently knew of all the limitations related to Steele's depression that were omitted by the ALJ." Id. The vocational expert's testimony during the hearing before ALJ McGuire suffers from the same flaw. The record does not reflect that ALJ McGuire communicated limitations related to Steele's depression to the vocational expert. Although the Seventh Circuit did not find this to be a major issue, see id., this flaw has not been corrected in ALJ McGuire's report.

## III. CONCLUSION

For the foregoing reasons, the court finds that ALJ McGuire's determination that Steele is not disabled is not supported by "substantial evidence." See id. at 940; Jens, 347 F.3d at 212. Plaintiff's Motion for Summary Judgment is therefore granted, and Defendant's Motion for Summary Judgment is denied. The court, however, declines Plaintiff's invitation to find that

Plaintiff is disabled and award Plaintiff benefits. See Cannon, 213 F.3d at 974. The court thus remands this case to Defendant for further proceedings consistent with this Opinion.

IT IS SO ORDERED.

ENTER:

*[signature: Charles R. Norgle]*

CHARLES RONALD NORGLE, Judge
United States District Court

Dated: May 12, 2006